UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC JOHNSON, | CV F   03 5369 OWW LJO P |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS REGARDING MOTION FOR SUMMARY JUDGMENT (Doc. 71) |
| ALAMEIDA, et. al., | |
| Defendants. | |

Eric Johnson ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action filed pursuant to 42 U.S.C. § 1983.

**A.  RELEVANT PROCEDURAL HISTORY**

Plaintiff filed the instant action on March 26, 2003. The Court dismissed the Complaint with leave to amend on April 14, 2003. (Doc. 6.) Plaintiff filed an Amended Complaint on May 12, 2003. (Doc. 8.)

The Court again dismissed the Complaint with leave to amend on September 8, 2003. (Doc. 9.) Plaintiff filed a Second Amended Complaint on September 22, 2003. (Doc. 10.) On

1

February 5, 2004, the Court ordered service of the Second Amended Complaint on Defendant Alameida. (Doc. 13.) Defendant filed an Answer on April 15, 2004. (Doc. 17.)

A Motion for Summary Judgment was filed by Defendant on October 5, 2005. (Doc. 71.) Plaintiff filed an Opposition on November 15, 2005. (Doc. 77.)

**B. SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a Summary Judgment Motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the

1  dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must
2  demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the
3  suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W.
4  Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that
5  the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for
6  the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

7      In the endeavor to establish the existence of a factual dispute, the opposing party need not
8  establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual
9  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at
10 trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce
11 the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"
12 Matsushita, 475 U.S. at 587 (*quoting* Fed. R. Civ. P. 56(e) advisory committee's note on 1963
13 amendments).

14     In resolving the Motion for Summary Judgment, the Court examines the pleadings,
15 depositions, answers to interrogatories, and admissions on file, together with the affidavits, if
16 any. Rule 56(c). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at
17 255, and all reasonable inferences that may be drawn from the facts placed before the court must
18 be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (*citing* United States v.
19 Diebold, Inc., 369 U.S. 654, 655 (1962)(*per curiam*). Nevertheless, inferences are not drawn out
20 of the air, and it is the opposing party's obligation to produce a factual predicate from which the
21 inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D.
22 Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987).

23     Finally, to demonstrate a genuine issue, the opposing party "must do more than simply
24 show that there is some metaphysical doubt as to the material facts. Where the record taken as a
25 whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine
26 issue for trial.'" Matsushita, 475 U.S. at 587 (*citation omitted*).

27 **C. SUMMARY OF COMPLAINT**
28     Plaintiff alleges that he is transgender and that the California Department of Corrections

Rehabilitation ("CDCR") regulations regarding classification (housing and yard placement). Specifically, Plaintiff alleges that the regulations are "deliberately indifferent" to his safety and/or fail to protect him, as well as other inmates who are homosexual, bisexual, and transgender because they do not consider one's sexual orientation in determining his classification. Plaintiff is seeking declaratory and injunctive relief only.

## C. UNDISPUTED FACTS[1]

1. Plaintiff is an inmate incarcerated at California Department of Corrections and Rehabilitation ("CDCR").
2. Plaintiff is a male inmate who was housed in the Security Housing Unit ("SHU") at California Correctional Institution ("CCI") at the time this suit was filed.
3. Plaintiff is not a bisexual or a transsexual.
4. Plaintiff's sexual orientation is consistent with that of a homosexual male.
5. CDCR has an established classification process that is used to assess and assign inmates to an appropriate prison; make decisions at the assigned prison regarding custody restrictions, work or program assignments; and to make subsequent transfers.
6. Upon an inmate's arrival within the prison system, all inmates, including parolees that are returned to custody, are processed through a reception center. The reception center provides inmates with an orientation into prison life, and introduction to available programs.
7. The reception center staff collect information regarding the social and criminal history of the inmate and a personal interview is also generally conducted by the counseling staff of each inmate. An interview is also conducted by medical staff to determine if there are any medical or mental health issues that require referral for further medical and/or mental health diagnosis, treatment or recommendation.
8. Counselors at the reception center complete an Institutional Staff Recommendation

---

[1] The following facts are undisputed for the purpose of this Motion.

Summary ("ISRS") for each newly committed or recommitted inmate, as well as other informational forms and the classification score sheet. A significant amount of information is obtained through this process regarding the inmate and is used by CDCR to assess the security level of an inmate, so as to determine where the inmate can be appropriately housed. For example, the ISRS, a comprehensive summary regarding the inmate, including: social history; medical and dental information; psychiatric and psychological information; enemy information; work skills; information regarding narcotics, drugs, or alcohol use; escape history; arson history; sex-related history; academic or vocational history; casework follow-up; criminal history; holds and detainers; and indications of any confidential information contained in the file.

9. A prisoner may also have special case factors that reflect a need for safety protection. These needs are considered in the classification process along with numerous other special case factors include, but are not limited to:

* **Age:** An inmate's youthfulness, immaturity, or advanced age.
* **Behavior:** An inmate's behavior record indicates he or she is capable of successful placement at an institution level lower than that indicated by his or her score.
* **Enemies:** Inmate has one or more persons under jurisdiction of the Department has been documented on a CDC Form 812 as an enemy. This should also be used when victimization is very probable due to case factors, such as where the nature of the offense will very likely create an enemy situation at certain institutions. Includes current protective housing unit ("PHU"_ cases and those who are natural victims because of their appearance or commitment offense.
* **Family ties:** An inmate has strong family ties to a particular area where other placement would cause a hardship.
* **Gang involvement or affiliation:** Documentation establishes that the inmate's gang association requires special attention or placement consideration.
* **Medical:** The inmate's medical condition may require treatment or continuing medical attention not generally available at all facilities.
* **Psychiatric:** The inmate's mental condition requires special treatment or may severely limit placement options. Included for consideration are Category B inmates.
* **Oral Copulation:** An inmate has a history or prior incidence of oral copulation which may require restricted custody or placement decision.
* **Sexual Orientation:** Bisexual or homosexual orientation may

5

1          require special placement.

2   10.  Special case factors are designated as administrative determinants in the
3        classification process. Administrative determinants are used to reflect the special
4        case factors that may require the placement of a prisoner in a particular prison or type
5        of prison. More than one administrative determinant may be considered.

6   11.  If an inmate needs to be considered for special placement because of his sexual
7        orientation, such as bisexual or homosexual, the administrative determinate "SOR"
8        can be placed on his classification. A transgender inmate on hormone therapy may
9        also be considered for administrative determinate "SOR."

10  12.  Upon determining the security level of an individual inmate, and considering any
11       special case factors, the counselor makes formal recommendations regarding the
12       placement of an inmate, and then the counselor's supervisor conducts a review.

13  13.  All the completed forms, documentation, and information regarding all newly
14       committed inmates is then provided to the Classification Services Representative
15       ("CSR") for review. The CSR considers the recommendations, but makes the final
16       determination regarding housing that is consistent with the inmate's case factors, as
17       well as availability of cells at each institution.

18  14.  The regulations regarding classification consider an individual inmate's total case
19       factors for purposes of housing and yard assignment. The CDCR does not have a
20       specific classification procedure designed to assess an inmate's housing or yard
21       needs solely or exclusively based on their sexual orientation.

22  15.  CDCR used to categorize homosexual, bisexual, or transgender inmates, classifying
23       them as "Category B" inmates and placing them in facilities such as California
24       Medical Facility ("CMF"). However, CDCR no longer utilizes and recommends
25       placement solely on this categorization. Instead, all case factors are considered when
26       determining the placement of inmates.

27  16.  While CDCR does not identify or stigmatize inmates based on their sexual
28       orientation, an inmate's sexual orientation is a special case factor that is considered

6

and may be relevant to institutional placement. Furthermore, safety and security are the main factors considered, and an inmate with one or more administrative or irregular placement conditions (known as an administrative determinants) may be housed in a facility with a security level which is inconsistent with the inmate's placement score.

17. After an inmate is transferred from the reception center to a facility, he is again interviewed by the receiving institution and appropriately housed within the facility. The inmate once again goes through another orientation, which includes information regarding the facility, the appeal process, as well as the inmate's right to appeal decisions including, but not limited to, decisions regarding housing and yard placement.

18. Shortly after the inmate's arrival at the facility, he is seen by a classification committee for an initial review to determine program needs, and to once again evaluate and determine the appropriateness of being housed at that facility.

19. Thereafter, at least annually, if not more often in some cases, the Institutional Classification Committee ("ICC") and/or the Unit Classification Committee ("UCC") will review and evaluate the appropriateness of an inmate's placement needs, fully considering any issues relating to safety and security.

20. In the event that an inmate believes he has been inappropriately classified and/or placed, either for purposes of housing or yard placement, or if the inmate believes that his placement presents concerns for his safety, there are several policies and procedures in place by which the inmate can express his concerns so that they may be considered and adequately addressed. For example, an inmate may raise his concerns with the committee members at his hearings(s); the inmate is entitled to present an appeal regarding these determinations by utilizing the 602 appeal process; the inmate may notify a correctional officer of his concerns for safety issues; or the inmate may discuss his concerns with his own counselor.

**D. ANALYSIS**

1   Plaintiff contends that the screening process and placement decisions are unconstitutional
2   because they are "deliberately indifferent" to his and other homosexual, bisexual, and
3   transgender inmate's safety.   Plaintiff seeks declaratory and injunctive relief in the form of an
4   Order that implements his proposed policy revisions, which include the right of gay, bisexual or
5   transgender inmate to choose his cellmate.[2]

   The Ninth Circuit has held that a traditional Eighth Amendment analysis should be
applied to an Eighth Amendment challenge to a prison regulation rather than the test set forth in
Turner v. Safley, 482 U.S. 89, 89, 107 S.Ct. 2254, 2261 (1987.)  Jordan v. Gardner, 986 F.2d
1521, 1525 (9th Cir. 1993).  To establish an Eighth Amendment claim, a prisoner must show that
he suffered from the "wanton and unnecessary infliction of pain." Rhodes v. Chapman, 452 U.S.
337, 347 (1981). Although prison conditions may be restrictive and harsh, prison officials must
provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety.  Id.;
Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986); Hoptowit v. Ray, 682 F.2d 1237,
1246 (9th Cir. 1982).  "Under traditional Eighth Amendment analysis, we first consider whether
there is an 'infliction of pain,' and, if so, whether that infliction is 'unnecessary and wanton'."
Jordan v. Gardner, 986 F.2d 1521, 1525 (9th Cir. 1993) (*en banc*).  To determine whether the
policy is "necessary," the Court considers the prison's security interests.  Id. at 1526-27.   To
determine if the infliction of pain is "wanton," the Court looks to see if prison officials acted
with "deliberate indifference" to a prisoner's needs.  Id. at 1527.

   "What is necessary to show sufficient harm for purposes of the Cruel and Unusual
Punishment Clause depends upon the claim at issue . . . ."  Hudson v. McMillian, 503 U.S. 1, 8
(1992).  "The objective component of an Eighth Amendment claim is . . . contextual and

---

[2] The proposed revisions are that the CDC screen gay, bi, transgender prisoners for assignments of housing and yard groups with compatible inmates; add a special Security Housing Unit ("SHU") for gay, bi, and transgender prisoners to be shared with inmates who are "compatible;" upon receipt of new inmates, inmates be asked about their sexual orientation and whether they are inmates who can program with gay prisoners; the Unit and Institutional Classification Committees must inform gay, gi and transgender inmates of the risks of programming on active gang lines and inform of the potential for rape and violence; gay, bi, and transgender inmates must be given the option of programming on a sensitive line and must complete a consent form to that effect; inmates be allowed to choose to single cell rather than dormitory, until such time as the inmate approves a compatible cellmate. Second Amended Compl. at 7-8.

8

responsive to contemporary standards of decency." Id. at 8 (*quotations and citations omitted*). "[E]xtreme deprivations are required to make out a[n] [Eighth Amendment] conditions-of-confinement claim." Id. at 9 (*citation omitted*). With respect to this type of claim, "[b]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." Id. (*quotations and citations omitted*).

To prevail on his motion for summary judgment, plaintiff must establish beyond controversy every essential element of his claim. Fontenot v. Upjohn Co., 780 F.2d 1190, 1194 (5th Cir. 1986). "Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (*quoting* Farmer v. Brennan, 511 U.S. 825, 837 (1994). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Id. (*quoting* Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)).

In this case, Defendant presents evidence of the regulations used to classify inmates upon their reception into the institution. The California Code of Regulations provide that upon the classification process, which commences upon reception, "shall" take into consideration the inmate's needs, interests and desires, his/her behavior and placement score in keeping with the department and institution's/facility's program and security missions and public safety. Cal.Code Regs. tit. 15, § 3375(a), (b). The regulations used to assess and place inmates in appropriate housing, work, and/or program assignments consider an inmates sexual orientation as well as a host of other criteria necessary to appropriately classify an inmate. Specifically, when inmates are processed through the reception center, staff conduct a personal interview to collect information from each inmate concerning their social and criminal history. Cal.Code Regs. tit.

15, § 3075.1(a)(6); Ex. O, Defendant's Statement of Undisputed Facts ("DUF").[3]  An evaluation of the inmate is also conducted by medical staff to determine whether there are any medical or mental health issues that require referral for further treatment or diagnosis.  Cal.Code Regs. tit. 15, § 3075.1(c); Ex. O, DUF.[4]

The regulations require the completion of a Institutional Staff Recommendation Summary ("ISRS") for each newly committed inmate and parole violator in addition to a classification score sheet and other required forms.  Cal. Code Regs. tit. 15, § 3075.1(a)(6), (h); Ex. O, DUF.[5]  The information obtained through this process is used to assess the security level and housing of an inmate and includes information such as the inmate's social history, medical and dental information, psychiatric and psychological information, enemy information, work skills, information regarding narcotics, drugs, or alcohol use, escape, arson, and sex-related histories, academic or vocational history, casework follow-up, criminal history, holds and detainers and indications of any confidential information contained in the inmate's file.  Cal. Code Regs. tit. 15, § 3075.1(h)(1).

An inmate having one or more administrative or irregular placement conditions which are known as "administrative determinants" may be housed in a facility with a security level that is not consistent with the inmate's placement score.  Cal. Code Regs. tit. 15, § 3375.2(a).  These special case factors include the inmate's age, behavior, enemies, family ties, gang involvement or affiliation, lewd and lascivious conduct, medical and psychiatric condition, history of oral copulation and, most notably, the inmate's sexual orientation.  Cal. Code Regs. tit. 15, § 3375.2 (b)(1)-(25); Ex. O,[6] DUF.  According to the regulations provided by Defendants, if an inmate is considered for special placement because of his sexual orientation, the administrative determinant "SOR" can be placed on his classification to inform of his special needs.  Cal.Code

---

[3]California Department of Corrections Operations Manual ("DOM") § 61010.4.

[4]DOM § 61010.4.

[5]DOM § 61010.4.

[6]DOM § 61010.11.3.

Regs. Tit. 15, § 3375.(2)(b)(23); Ex. O,[7] DUF.   After collection of all of the above information and review, the classification counselor makes a formal recommendation regarding the placement of the inmate. Ex. O,[8] Ex. A,[9] DUF.

In addition, Defendants present evidence that Plaintiff, was previously given a "Category B" classification which indicated that the inmate was homosexual, bisexual, or transgender and caused the inmate to be placed in facilities like the California Medical Facility ("CMF"). Ex. D, DUF; Ex. C,[10] DUF.   However, he requested that the category be removed and he be placed back into general population. Ex. B, attach 4, 5; Ex. C[11], DUF.   Each time Plaintiff later returned to custody, he was again evaluated and his sexual orientation ("SOR") in addition to other factors, was considered in determining his placement needs. Exhs. B-attach 1, C, D, E, F, H, I; Pl.'s Dep. 60:11-20; 62.13.

Based on the evidence provided, the Court finds Defendant has demonstrated that the established classification regulations were not deliberately indifferent to Plaintiff's or any other inmates needs as a homosexual, bi-sexual, transsexual or transgender.  Accordingly, the burden therefore shifts to Plaintiff to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

As stated above, in attempting to establish the existence of this factual dispute, Plaintiff may not rely upon the mere allegations or denials of his pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11; First Nat'l Bank v. Cities Service. Co., 391 U.S. 253, 289 (1968); Strong v. France, 474 F.2d 747, 749 (9th Cir. 1973).

---

[7] DOM § 61010.11.3.

[8] DOM § 61030.6.2.

[9] Rianda Decl.

[10] Plaintiff's Deposition ("Pl's Dep.") at 53:5-17

[11] Pl.'s Dep. at 53:5-25; 54:1-13.

1    Plaintiff has submitted no evidence demonstrating that Defendant Alameida personally
2 participated in the alleged deprivation of constitutional rights; knew of the violations and failed
3 to act to prevent them; or promulgated or "implemented a policy so deficient that the policy
4 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional
5 violation.'" Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989)(*internal citations omitted*).

6    Plaintiff further fails to demonstrate that the regulations disregard or fail to consider one's
7 sexual orientation in classifying or housing an inmate. In fact, the evidence before shows that
8 Plaintiff's sexual orientation has been considered throughout his time within the California
9 Department of Corrections.

10    The Court notes that Plaintiff's main complaint is that he was not given placement on the
11 Sensitive Needs Yard as he requested. However, the denial of Plaintiff's request does not
12 constitute a constitutional violation nor does it establish that the statute disregarded Plaintiff's
13 needs. Plaintiff concedes in his deposition that he has been housed in a dormitory where all the
14 inmates were homosexual, bi-sexual, transsexual, or transgender. In addition, many of Plaintiff's
15 cellmates have been homosexual. In fact, Plaintiff states that the only documented mutual
16 combat situation was between himself and his "gay" cellmate as a result of being "catty" to each
17 other. Pl.'s Dep. at 65. While housed in the general population at the Donovan reception center,
18 Plaintiff had no problems with either staff or other inmates. Pl.'s Dep. At 58: 1-25. Plaintiff's
19 history of SHU terms stem from his disciplinary history of attacking staff. Ex. D-G, DUF.
20 According to the evidence, Plaintiff has successfully double celled at California Correctional
21 Institution where he is currently housed, however, he is currently classified as single-cell or "S"
22 status. Ex. B, attach 7; Ex. L, DUF. Plaintiff is assigned to an individual exercise module
23 ("IEM") yard, as he has expressed safety concerns with the other exercise yards available. Id.
24 Thus, contrary to Plaintiff's contentions, the evidence shows that Plaintiff's sexual orientation
25 *has* been taken into account by the CDC regulations and staff for purposes of classification,
26 housing and yard placement.

27    Plaintiff complains that there is "no existing law or policy and procedure for transgender
28 inmates" and thus, assumes that existing policies are deliberately indifferent to him. (Plaintiff's

12

1  Separate Statement of Undisputed Facts No. 33.)  However, this fact is insufficient to establish a
2  constitutional violation.  As noted above, Plaintiff must demonstrate an unnecessary and wanton
3  infliction of pain.  Plaintiff provides declarations from four inmates, however, these declarations
4  do not aid Plaintiff in his task of establishing a disputed issue of fact.  The declarations tend to
5  provide support for the fact that Plaintiff has requested to be placed on the Sensitive Needs Yard
6  but his request has been denied (Ex. A, Opposition ["Opp."]), that Plaintiff's proposed changes
7  to classification procedures would be good (Ex., I, Opp.), or provide personal information about
8  the stigma attached to being bi, gay or transsexual in a prison setting. (Exs, I, P, Opp.).[12]  The
9  declarations, however, are insufficient to demonstrate a widespread disregard of sexual
10 orientation within the Department of Corrections.

11      Plaintiff provides no evidence to establish the requisite intent needed to meet his burden
12 of proving an Eighth Amendment claim.   As noted above, it is not enough that a prison official
13 should have know of a risk or harm; rather, the official must actually be aware of facts from
14 which the inference could be drawn, actually draw the inference, and nonetheless disregard the
15 risk to the inmate's safety.  Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1980 (1994).  Here,
16 Plaintiff concedes that those times where he felt he had safety concerns *he* choose not raise those
17 concerns to any prison staff even after he experienced in-cell assaults.  Pl.'s Dep. 72:3-15; 95:7-
18 15; 175:18-25; 176:1-9.  When Plaintiff did raise such concerns, he states that staff took
19 immediate action to protect him from harm.  Id.  Accordingly, the Court finds Plaintiff fails to
20 demonstrate that Defendant knew of and disregarded a risk to his safety.

21      In conclusion, the Court finds that Plaintiff's contentions that a homosexual or
22 transgender inmate's inability to "choose" whether to have a cellmate, who that cellmate is, or
23 that there is no regulation in place only applicable to transgenders, do not rise to the level of
24 constitutional violations.  Moreover, based on the aforementioned evidence and contrary to
25 Plaintiff's assertions, the challenged regulations clearly consider an inmate's sexual orientation
26 in making classification decisions.  Accordingly, the Court finds no disputed issue of fact and

---

[12]The Court notes that two of the four declarations were prepared by Plaintiff on behalf of the inmate signing the declaration.

that the Defendant is entitled to summary judgment.

The determination that the regulation does not disregard one's sexual orientation in classification or placement in a particular institution is dispositive of any implied allegation of supervisory liability.

## E. CONCLUSION AND RECOMMENDATION

Accordingly, the Court RECOMMENDS that Defendant's Motion for Summary Judgment be GRANTED and the case DISMISSED.

The Court further ORDERS that these Findings and Recommendations be submitted to the United States District Court Judge assigned to this action pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within THIRTY (30) days after being served with a copy of these Findings and Recommendations, any party may file written Objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Replies to the Objections shall be served and filed within TEN (10) court days (plus three days if served by mail) after service of the Objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file Objections within the specified time may waive the right to appeal the Order of the District Court.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   March 27, 2006**            /s/ Lawrence J. O'Neill
b9ed48                                  UNITED STATES MAGISTRATE JUDGE